UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALKA RANJAN,<br><br>            *Plaintiff*,<br><br>      v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>            *Defendants*. | Civil Action No. 23-2453 (LLA) |

### MEMORANDUM OPINION AND ORDER

The U.S. Department of Homeland Security ("DHS") found that Plaintiff Alka Ranjan obtained a visa "by fraud or willfully misrepresenting a material fact" and therefore labeled her "inadmissible" to the United States. *See* 8 U.S.C. § 1182(a)(6)(C)(i); ECF No. 1. Ms. Ranjan sues DHS and its secretary, Alejandro N. Mayorkas, alleging that the agency failed to afford her appropriate process in making that determination. ECF No. 1. Defendants move to dismiss. ECF No. 12. For the reasons explained below, the court will deny Defendants' motion.

### I.     Factual Background

In resolving DHS's motion to dismiss, the court accepts the following factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Alka Ranjan is a citizen of India. ECF No. 1 ¶ 20. She was admitted to the U.S. on an F-1 student visa in December 2015 and earned a Master of Science in Computer Information Systems from Pace University in August 2017. *Id.* ¶¶ 23-24; *see* U.S. Citizenship & Immigr. Servs.,

*Students and Employment*.[1]  After receiving her degree, Ms. Ranjan applied for and received Optional Practical Training ("OPT") employment authorization.[2]  ECF No. 1 ¶¶ 25-26.  She began working for Consultadd Inc. in July 2018.  *Id.* ¶ 27.  She later applied for and received a 24-month OPT extension for graduates of STEM programs.  *Id.* ¶ 29.  That authorization was valid through October 2020.  *Id.*

In June 2020, Consultadd petitioned to change Ms. Ranjan's status from F-1 to H-1B.  *Id.* ¶ 31.  An H-1B visa allows employees in "specialty occupations" to work in the United States for up to three years (with the potential to extend the visa to a maximum of six years).  *See* U.S. Citizenship & Immigr. Servs., *H-1B Specialty Occupations*.[3]  U.S. Citizenship and Immigration Services ("USCIS") approved the petition, granting Ms. Ranjan H-1B status effective from October 2020 to September 2021.  ECF No. 1 ¶ 32.  Consultadd filed a subsequent petition to extend Ms. Ranjan's H-1B status from September 2021 to September 2022, which was also approved.  *Id.* ¶¶ 34-35.

On November 21, 2022, Shipt Inc. filed a petition to employ Ms. Ranjan and extend her H-1B status until November 2024.  *Id.* ¶¶ 36-37.  USCIS approved the petition.  *Id.* ¶ 37.  But even after a petition is approved, the H-1B application process is not over: the applicant must undergo an in-person interview with a consular officer, who decides whether to issue the visa.  8 U.S.C. § 1202(h); 22 C.F.R. § 41.121(a).  On April 10, 2023, Ms. Ranjan attended an in-person interview

---

[1] *Available at* https://perma.cc/D5Z3-4C2R.  The court may take judicial notice of "information posted on official public websites of government agencies."  *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

[2] OPT "is temporary employment that is directly related to an F-1 student's major area of study."  U.S. Citizenship & Immigr. Servs., *Optional Practical Training (OPT) for F-1 Students*, https://perma.cc/2N42-HLM8.

[3] *Available at* https://perma.cc/E9LX-DUUP.

2

at the Mumbai Consulate.  *Id.* ¶ 40.  The consular officer denied her application for an H-1B visa pursuant to 8 U.S.C. § 1182(a)(6)(C)(i), which provides:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

ECF No. 1 ¶ 40.  Non-citizens deemed inadmissible under this provision are categorically ineligible to receive a visa or be admitted to the United States.  *See* 8 U.S.C. § 1182(a).  Ms. Ranjan disputes the inadmissibility finding.  ECF No. 1 ¶ 1.

"On being refused the H-1B Visa, [Ms. Ranjan] was advised that [DHS] made the 8 U.S.C. § 1182(a)(6)(C)(i) finding and to request its resolution . . . through DHS TRIP, *i.e.*, Traveler Redress Inquiry Program."  *Id.* ¶ 41.  In May 2023, Ms. Ranjan submitted a TRIP request asking DHS to remove the inadmissibility finding.  *Id.* ¶ 43.  DHS responded, stating that she would need to apply for and obtain a visa in order to reenter the United States.  ECF No. 1-3 (Pl. Ex. 4), at 81.  The agency neither confirmed nor denied that it had removed the inadmissibility finding.  *See id.*; ECF No. 1 ¶ 44.

Ms. Ranjan applied again for an H-1B visa in June 2023 and was again refused because she had been deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i).  ECF No. 1 ¶ 45.  In July 2023, she applied for an H-4 visa to join her husband in the United States, where he is employed on an H-1B visa.[4]  *Id.* ¶¶ 47-49.  She was refused, again, for the same reason: because she has been deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i).  *Id.* ¶ 50.

---

[4] An H-4 visa allows certain spouses of H-1B visa recipients to reside in the United States. *See* U.S. Citizenship & Immigr. Servs., *Employment Authorization for Certain H-4 Dependent Spouses*, https://perma.cc/3SUS-B8V6.

Because of these events, Ms. Ranjan lost her job and has been forcibly separated from her husband and child (a U.S. citizen), who both live in the United States. *See* ECF No. 19, at 2. Ms. Ranjan does not know which DHS officer or employee made the inadmissibility finding. ECF No. 1 ¶ 7. She alleges that she "was never served with the requisite notice of the allegations of fraud or material misrepresentation prior to this finding being made and she was never informed once the finding was finally made." *Id.*

## II.  Procedural History

Ms. Ranjan sues DHS and Secretary Mayorkas, arguing that the agency failed to provide her appropriate process in making the 8 U.S.C. § 1182(a)(6)(C)(i) inadmissibility finding, as required by the Immigration & Nationality Act ("INA"), Administrative Procedure Act ("APA"), 5. U.S.C. § 551, *et seq.*, and the Due Process Clause of the Fifth Amendment. ECF No. 1. She seeks declaratory and injunctive relief, asking the court to hold that DHS's inadmissibility finding (and its failure to adhere to required processes in making that finding) was arbitrary and capricious, and to vacate it or set it aside. ECF No. 1, at 21-22 (Prayer for Relief). DHS moved to dismiss for failure to state a claim. ECF No. 12.

Neither party briefed standing in its initial filings. In its motion to dismiss, DHS argued that Ms. Ranjan's suit was barred by consular nonreviewability, relying on the logic of *Thatikonda v. Department of Homeland Security*, No. 21-CV-1564, 2022 WL 425013 (D.D.C. Feb. 11, 2022). ECF No. 12, at 10, 12. Ms. Ranjan countered that consular nonreviewability was inapplicable. ECF No. 13, at 16-21. Because "[t]his court, as a matter of constitutional duty, must assure itself of its jurisdiction to act in every case," the court ordered the parties to file supplemental briefs explaining whether and on what basis Ms. Ranjan has standing. *CTS Corp. v. E.P.A.*, 759 F.3d 52, 57 (D.C. Cir. 2014); *see Thatikonda*, 2022 WL 425013, at *3 n.5 (explaining that the court

must begin with standing before addressing consular nonreviewability, because standing is jurisdictional and consular nonreviewability is not); Feb. 13, 2024 Minute Order. In her supplemental brief, Ms. Ranjan argues that she has standing to challenge DHS's inadmissibility finding under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). ECF No. 16, at 4-5. In DHS's response, the agency reverses course: rather than ask the court to adopt the logic of *Thatikonda*, as it had in its motion to dismiss, DHS now contends that *Thatikonda* was incorrectly decided and that Ms. Ranjan lacks standing to bring this suit. *See* ECF No. 18, at 5.

DHS's motion to dismiss is now ripe for decision. The court considers all of the parties' filings in rendering its decision. *See* ECF Nos. 1, 12, 13, 14, 16, 18, 19.

### III. Legal Standards

Before proceeding to the merits, the court must assure itself of jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Because Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," a plaintiff "must establish that [she] [has] standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (first quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006); then quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To meet the constitutional requirements for standing, a plaintiff must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

If the court has jurisdiction, it must rule on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), the court will dismiss a complaint

5

that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Id.*

## IV.   Discussion

### A.   Standing

DHS disputes only the first element of standing: whether Ms. Ranjan has alleged an injury in fact.  *See generally* ECF No. 18.  DHS offers two reasons why Ms. Ranjan has not experienced an injury in fact.  First, she has no "legally protected interest" at stake because she has no right to enter the United States.  *Id.* at 3 (quoting *Lujan*, 504 U.S. at 560).  Second, her alleged injury is not sufficiently concrete to confer standing because it does not share "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *See id.* (quoting *TransUnion LLC*, 594 U.S. at 425).  The court addresses each argument in turn.

#### 1.   Legally protected interest

An injury in fact requires "an invasion of a legally protected interest."  *Lujan*, 504 U.S. at 560.  "Logically, a petitioner cannot challenge an action as an invasion of a legally protected interest" if "the action is of no legal significance."  *Weaver's Cove Energy, LLC v. R.I. Dep't of Env't Mgmt.*, 524 F.3d 1330, 1333 (D.C. Cir. 2008) (internal quotation marks omitted). Ms. Ranjan argues that DHS has violated the procedural protections afforded by the INA, APA, and the Fifth Amendment.  *See* ECF No. 1 ¶¶ 59-128 (statutory claims); *id.* ¶ 74 (constitutional claim).  DHS counters that Ms. Ranjan has no legally protected interest because, as a noncitizen located outside the United States, she has no underlying right to enter the country.  *See* ECF No. 18,

at 3-4.  The court first confronts this general argument and then addresses an additional obstacle to Ms. Ranjan's Fifth Amendment claim.

DHS is correct that "foreign nationals seeking admission have no constitutional right to entry." *Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *see Polyzopoulos v. Garland*, No. 20-CV-804, 2021 WL 1405883, at *7 (D.D.C. Apr. 14, 2021).  But "[a] right of entry . . . is not a prerequisite to standing in the case of someone seeking entry to the United States." *Matushkina v. Nielsen*, 877 F.3d 289, 293 (7th Cir. 2017); *see Pourabdollah v. Blinken*, No. 23-CV-1603, 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024) ("[A] visa applicant's lack of a constitutional right to entry does not preclude Article III standing.").  In *Matushkina*, the Seventh Circuit addressed a similar challenge by a noncitizen who was living outside the United States.  877 F.3d at 291-92.  A U.S. Customs and Border Protection officer had deemed Ms. Matushkina inadmissible under Section 1182(a)(6)(C)(i) because she had failed to disclose that her daughter was working in the United States in violation of her student visa.  *Id.* at 291.  Several years later, Ms. Matushkina applied for a visa and was denied because of the earlier inadmissibility determination.  *Id.*  She sued DHS challenging only the inadmissibility determination, not the visa denial.  *Id.*  The district court dismissed for lack of standing, concluding—as DHS argues here—that "as an unadmitted alien, [Ms.] Matushkina had no legally protected right to enter the United States." *Id.* at 292.  The Seventh Circuit rejected that argument, holding that although Ms. Matushkina had no right to be admitted to the United States, she had a legally cognizable "interest in her *admissibility* to the United States, and the injury to that interest [wa]s apparent on the face of the complaint." *Id.* at 293 (emphasis added).

Other courts have come to similar conclusions elsewhere in immigration law.  For example, "'los[ing] a significant opportunity to receive an immigrant visa' . . . is itself a concrete injury,"

7

although immigration plaintiffs have no right to the visa itself. *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 638 (6th Cir. 2013) (quoting *Abboud v. INS*, 140 F.3d 843, 847 (9th Cir. 1998)); *see Rossville Convenience & Gas, Inc. v. Garland*, No. 20-CV-2218, 2021 WL 5865446, at *7 (D.D.C. Dec. 10, 2021) (same); *Hsiao v. Scalia*, 821 F. App'x 680, 683 (9th Cir. 2020) (same); *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (same). And courts in this district have routinely held that plaintiffs living outside the United States have standing to challenge unreasonable delays in the adjudication of their visa applications. *See, e.g.*, *Iqbal v. U.S. Dep't of State*, No. 23-CV-2350, 2024 WL 3534665, at *3 (D.D.C. July 25, 2024); *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222, at *3 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464, at *2-3 (D.D.C. June 4, 2024); *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Ahmadi v. Scharpf*, No. 23-CV-953, 2024 WL 551542, at *3 (D.D.C. Feb. 12, 2024); *Khan v. Blome*, No. 22-CV-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). The plaintiffs in these cases had no underlying right of entry, but they still had some legally protected interest in the government's adherence to required procedures. Given the weight of precedent, both in this district and beyond, the court cannot agree with DHS that a noncitizen, non-resident plaintiff lacks standing simply because she has no substantive right to enter the United States.

With regard to her Fifth Amendment due process claim, Ms. Ranjan must meet an additional requirement to establish standing: she must show that the Fifth Amendment in fact applies to her.[5] "The Supreme Court has long held that non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections." *Jifry v. F.A.A.*,

---

[5] Although DHS does not address this requirement in its supplemental brief, *see generally* ECF No. 18, the court must satisfy itself that it has subject-matter jurisdiction to hear Ms. Ranjan's constitutional claim, *see CTS Corp.*, 759 F.3d at 57.

370 F.3d 1174, 1182 (D.C. Cir. 2004); *see People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) (holding that "[a] foreign entity without property or presence in this country" lacks substantial connections and therefore has no constitutional rights). However, "the Court has recognized that aliens may be accorded protections under the Constitution" where they "have come within the territory of the United States and established 'substantial connections' with this country . . . or 'accepted some societal obligations.'" *Jifry*, 370 F.3d at 1182-83 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271, 273 (1990)).

"The D.C. Circuit has no test to determine what degree of connection to the United States counts as 'substantial.'" *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 77 (D.D.C. 2020); *see Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001) ("[W]e are not undertaking to determine, as a general matter, how 'substantial' an alien's connections with this country must be to merit the protections of the Due Process Clause or any other part of the Constitution."). In the absence of binding precedent, the court finds *López Bello v. Smith*, 651 F. Supp. 3d 20 (D.D.C. 2022), *aff'd sub nom. Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024), instructive, because it presents similar facts. In *López Bello*, the plaintiff had lived in the United States and held two visas allowing him to do so. *Id.* at 28. The plaintiff's spouse lived in the United States on a temporary visa, as did several of his children—two of whom were U.S. citizens. *Id.* The court held that the plaintiff "ha[d] established the requisite 'substantial connections' necessary to assert constitutional claims"—including a Fifth Amendment due process claim. *Id.* at 38.

Ms. Ranjan is similarly situated to the plaintiff in *López Bello*. She lived, studied, and worked in the United States for more than six years on F-1 and H-1B visas; her husband lives and works in the United States on an H-1B visa; and her child, who is a U.S. citizen, also lives in the

9

United States.  *See* ECF No. 1 ¶¶ 20, 23-38; ECF No. 19, at 2.  In short: Ms. Ranjan has built a life in the United States, ECF No. 19, at 2, and, like the plaintiff in *López Bello*, she has established "substantial connections" with the United States.  She is therefore protected by the Fifth Amendment's due process clause.

### 2.     Concrete harm

To establish an injury in fact, Ms. Ranjan must also allege a concrete injury—a harm that is "real, and not abstract."  *TransUnion LLC*, 594 U.S. at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)); *see WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) ("A procedural injury claim . . . must be tethered to some concrete interest adversely affected by the procedural deprivation.").  "[T]raditional tangible harms," like physical injury or monetary harm, "readily qualify as concrete injuries"—but "intangible harms can also be concrete."  *TransUnion*, 594 U.S. at 425.  To determine whether an alleged injury is sufficiently concrete to confer standing, the court "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."  *Id.* at 424.

Immigration plaintiffs often ground their claims in traditional harms that are obviously concrete: lost professional opportunities, forced separation from family members, and difficulty accessing medical care.  *See, e.g.*, *Iqbal*, 2024 WL 3534665, at *3; *Kahbasi*, 2024 WL 3202222, at *3; *Rashidian*, 2024 WL 1076810, at *4.  But Ms. Ranjan advances a different argument.  She posits that, much like the plaintiffs who won the day in *TransUnion*, she was injured by Defendants' dissemination of allegedly inaccurate information—an injury that bears a close relationship to the common-law tort of defamation.  *See* ECF No. 16, at 5.

To understand this argument, it is useful to begin with the Supreme Court's decision in *TransUnion*.  The plaintiff class sued TransUnion, a credit reporting agency, arguing that it had "failed to use reasonable procedures to ensure the accuracy of their credit files."  594 U.S. at 417.

10

For about 1,800 class members, TransUnion had disseminated misleading credit reports to businesses, "label[ing] the class members as potential terrorists, drug traffickers, or serious criminals." *Id.* at 432. The Court analogized that injury to the tort of defamation: "[u]nder longstanding American law, a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party." *Id.* (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 13 (1990)). Because those class members had "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation," the Court had "no trouble concluding" that they had experienced a concrete harm sufficient to confer standing. *Id.* The Court clarified, however, that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 434. Thus, the Court held that the roughly 6,000 class members whose inaccurate reports had never been disseminated could not satisfy the concrete-harm requirement. *Id.* at 434-35.

Like those 1,800 or so *TransUnion* plaintiffs who had standing, Ms. Ranjan has alleged an injury that shares a "close relationship" with defamation. She claims that DHS failed to comply with required procedures in making its Section 1182(a)(6)(C)(i) inadmissibility determination. *See* ECF No. 1 ¶¶ 63-73, 92-108; *TransUnion*, 594 U.S. at 429 ("[P]laintiffs argue that TransUnion failed to comply with statutory obligations . . . to follow reasonable procedures to ensure the accuracy of credit files."). She further claims that DHS "published that finding in a database" to "a third-party government agency and officers"—namely, consular officers.[6] ECF No. 16, at 1, 3;

---

[6] Ms. Ranjan does not expressly allege in her complaint that DHS published its inadmissibility finding to other agencies and their officers. *See generally* ECF No. 1. However, the court can reasonably infer (as it must at the motion-to-dismiss stage, *see Iqbal*, 556 U.S. at 678) that such publication occurred. Ms. Ranjan alleges that DHS made the inadmissibility finding, *see generally* ECF No. 1, and that a consular officer later denied her a visa because of that inadmissibility finding, *see id.* ¶ 4. It stands to reason that the consular officer could not have relied on DHS's finding had DHS not disseminated it.

11

*see TransUnion*, 594 U.S. at 433 ("[C]lass members whose reports were disseminated to third parties suffered a concrete injury in fact."). Being improperly labeled as an individual who lied to or defrauded the government to procure a visa "bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* at 433; *see Ahmed v. Kable*, No. 21-CV-3333, 2023 WL 6215024, at *11 (D.D.C. Sept. 25, 2023) (concluding that the plaintiff's alleged inclusion on a terrorism watchlist was "constitutionally concrete because it 'bears a sufficiently close relationship to the harm from a false and defamatory statement.'" (quoting *TransUnion*, 594 U.S. at 433)). Ms. Ranjan is thus differently situated from the plaintiff in *Thatikonda*, who grounded her standing argument in traditional concrete interests like the risk of losing her job and "ma[de] no effort to tie [her] alleged procedural injury to any other past or future concrete injury." 2022 WL 425013, at *5 n.6. Ms. Ranjan has based her alleged procedural injury on a constitutionally concrete harm that is distinct from the general harms stemming from a visa denial: the defamation-like injury wrought when "Defendants published [an] unlawfully entered inadmissibility finding to a third-party government agency and officers."[7] ECF No. 16, at 3.

Because Ms. Ranjan has alleged both a legally protected interest and a concrete harm, she has alleged an injury in fact sufficient for Article III standing. *See Ark Initiative*, 749 F.3d at 1075.

## B.   Consular Nonreviewability

Having established that Ms. Ranjan has standing to challenge DHS's inadmissibility finding, the court next considers Defendants' motion to dismiss her complaint as barred by consular nonreviewability. ECF No. 12. "The doctrine of consular nonreviewability prevents a federal court from second-guessing a United States consular officer's decision to issue or withhold

---

[7] Notably, Defendants raise no challenge to this argument. They discuss the concrete-harm requirement only in passing and do not even mention Ms. Ranjan's *TransUnion* analogy. *See* ECF No. 18, at 9-11. The court can only assume that Defendants chose to forfeit any counterargument.

12

a visa." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1023 (D.C. Cir. 2021).  In its motion to dismiss, DHS argues that consular nonreviewability bars this suit because "[Ms.] Ranjan's challenge to DHS's purported finding cannot be divorced from her attack on the consular officer's decision to deny her visa." ECF No. 12, at 11 (citing *Thatikonda*, 2022 WL 425013, at *6-7).  But, as discussed above, that is not the case: Ms. Ranjan has alleged a legal injury that exists regardless of any past or future visa denial—an injury linked to DHS's dissemination of its (allegedly unlawful) inadmissibility finding.

Consider the following hypothetical: on Monday, John Smith defames Jane Doe on a television show.  Jane does not watch the show and is unaware of John's statement.  On Tuesday, Jane goes to a job interview and is denied the job because her prospective employer heard John's defamatory statement.  Jane sues John.  Had Jane missed the job interview, would she still have been injured by John?  Of course.  The Tuesday job interview happened to be the forum in which Jane learned of the defamation—and the lost job opportunity may go to Jane's damages—but Jane was still injured on Monday when John "published" his defamatory statement to a third party.  The publication of the defamatory statement, not the job denial, is the injury; John, not the prospective employer, is the tortfeasor.

The same is true for Ms. Ranjan.  Her interview with the consular officer happened to be the forum in which she first learned about DHS's inadmissibility determination, *see* ECF No. 1 ¶ 4, but that is of no moment.  The dissemination of the inadmissibility finding, not the visa denial, is the alleged injury; DHS, not the State Department, has (allegedly) acted unlawfully.  Because Ms. Ranjan's injury exists independent of any visa denial, her suit cannot be written off as a "collateral attack," ECF No. 12, at 6, on a consular officer's decision.

For this reason, Ms. Ranjan's case is distinguishable from *Thatikonda* and *Matushkina*, where the plaintiffs challenging Section 1182(a)(6)(C)(i) inadmissibility determinations had standing but could not overcome consular nonreviewability. As discussed above, the plaintiff in *Thatikonda* alleged traditional concrete injuries like the risk of losing her job but "ma[de] no effort to tie [her] alleged procedural injury to any other past or future concrete injury." 2022 WL 425013, at *5 n.6. Similarly, the *Matushkina* court seemed to assume that the plaintiff had a concrete injury either because she had been denied a visa or because the inadmissibility finding created an obstacle to her receiving a visa in the future. *Compare* 877 F.3d at 295 ("[The plaintiff] challenges the inadmissibility determination that is the basis for the unfavorable visa decision (which in turn provides standing). We conclude that this indirect attack on the visa denial cannot succeed."), *with id.* (explaining that the plaintiff's requested relief would "would remove an obstacle for her visa application, which is why she has standing to assert her claim"). Neither plaintiff clearly alleged a distinct injury that inheres in the dissemination of the inadmissibility finding itself, analogous to defamation. Instead, they alleged injuries limited to or entangled with their visa denials—and the *Thatikonda* and *Matushkina* courts therefore saw their suits as indirect challenges to those visa denials, which are barred by consular nonreviewability. *See Thatikonda*, 2022 WL 425013, at *6; *Matushkina*, 877 F.3d at 295. Because Ms. Ranjan's concrete injury exists independent of any visa denial, *Thatikonda* and *Matushkina* are inapposite.

The question, therefore, is a narrower one: does the doctrine of consular nonreviewability shield DHS's decision to enter a Section 1182(a)(6)(C)(i) inadmissibility finding? DHS has offered nothing to suggest that the inadmissibility finding was made by a *consular* officer—and there is therefore no reason to believe that consular nonreviewability attaches. *See Gill v. Mayorkas*, No. 20-CV-939, 2021 WL 3367246, at *8 (W.D. Wash. Aug. 3, 2021) (distinguishing

immigration officers from consular officers and holding that an inadmissibility determination made by an immigration officer is not protected by consular nonreviewability); ECF No. 1 ¶ 7 (explaining that Ms. Ranjan does not know which DHS officer or employee made the inadmissibility finding, and DHS has proffered no information on this point); *see generally* ECF Nos. 12, 14, 18.

Of course, Ms. Ranjan's claim could well be nonreviewable for another reason. *See Dep't of State v. Munoz*, 144 S. Ct. 1812, 1820 (2024) ("Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'" (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-91 (1952))); *see, e.g.*, *Doshi v. Blinken*, No. 23-CV-3613, 2024 WL 3509486, at *4-6 (D.D.C. July 22, 2024) (holding that the State Department's designation of the plaintiff as inadmissible under Section 7031(c), codified in a statutory note to 8 U.S.C. § 1182, was nonreviewable). For example, if Ms. Ranjan had sought a waiver of her inadmissibility finding from the Attorney General pursuant to 8 U.S.C. § 1182(i)(1), and the Attorney General had denied relief, that decision would not be reviewable. *See* 8 U.S.C. § 1182(i)(2). But the court cannot even begin to determine whether nonreviewability attaches, because it does not know who made the inadmissibility determination and whether that decision was discretionary. *See* ECF No. 1 ¶ 7; *Gill*, 2021 WL 3367246, at *8 ("[A] nondiscretionary decision . . . is not entitled to protection from judicial review."). And regardless, DHS has failed to raise any theory of nonreviewability distinct from the consular nonreviewability afforded to consular officers. *See* ECF No. 12. For these reasons, the court must deny Defendants' motion to dismiss on the ground of consular nonreviewability. If DHS believes that Ms. Ranjan's

inadmissibility finding is nonreviewable for another reason, it may raise that argument in a subsequent motion.[8]

## V.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 12, is hereby **DENIED**. Defendants shall file an answer to Plaintiff's complaint on or before August 29, 2024.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 15, 2024

---

[8] Because nonreviewability goes to the merits of the case rather than to the court's jurisdiction to hear the case, the court is not required to resolve the question today. *See Munoz*, 144 S. Ct. at 1820 n.4 (explaining that "the doctrine of consular nonreviewability is not jurisdictional"); *Baan Rao Thai Rest.*, 985 F.3d at 1028-29 (same); *Doshi*, 2024 WL 3509486, at *3 (resolving question of reviewability pursuant to Rule 12(b)(6), rather than Rule 12(b)(1)).